UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REGINA L. BANKS, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| | ) | |
| v. | ) | File No. |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| GREEN TREE SERVICING, LLC and BANK OF AMERICA, N.A., | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, REGINA L. BANKS, by the undersigned attorneys, complains of GREEN TREE SERVICING, LLC and BANK OF AMERICA, N.A., as follows:

### NATURE OF THE ACTION

1. Plaintiff REGINA L. BANKS ("Banks") brings this action for damages from breach of contract, and for violations of the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Telephone Consumer Protection Act ("TCPA").

2. All of the claims stated herein stem from the wrongful servicing and debt collection activities related to Banks' home mortgage loan.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Banks resides in this District and the events occurred in this District.

4. Diversity jurisdiction is conferred upon this Court by 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000.00 and is between citizens of different states.

1

**PARTIES**

5. Plaintiff Banks is a natural person who resides at 1501 N. Massasoit Ave., Chicago, IL 60651 ("subject property"). The subject property is Banks' primary residence.

6. Defendant BANK OF AMERICA, N.A. ("BANA") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. BANA is a foreign company and a creditor, lender, and servicer of mortgage loans across the country, including Illinois. BANA does business as Bank of America Home Loans.

7. BANA was the servicer of the mortgage loan through April 1, 2013.

8. Defendant GREEN TREE SERVICING, LLC ("Green Tree") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Green Tree is a foreign company in the business of servicing loans and debt collection across the country, including Illinois.

9. Green Tree was the servicer of the mortgage loan from April 1, 2013 to the present.

**INTRODUCTION**

10. Banks made all of the monthly payments on her home mortgage loan without fail from its origination in 2002 through the filing of this complaint. Sometime after origination, BANA acquired servicing rights. Banks continued to make every payment as directed by BANA. BANA accepted every payment each month.

11. In March 2013, BANA sold the servicing rights to Green Tree with an effective date of April 1, 2013. At the time of the transfer, BANA and Green Tree misapplied Banks' payments, miscalculated Banks' principal balance, and treated the loan as if it was in default.

12. Over the last year, Banks sent several Qualified Written Requests ("QWRs") and FDCPA dispute letters to both BANA and Green Tree in an attempt to resolve the servicing errors.

13. BANA and Green Tree have failed to provide any good faith responses and simply ignored some of Banks' disputes. Instead, Green Tree proceeded with debt collection efforts after the servicer change without ever verifying the debt or correcting the servicing errors. Green Tree threatened Banks with countless dunning letters and with foreclosure.

### FACTS SUPPORTING THE CAUSES OF ACTION

14. On December 10, 2002, Banks executed a 15 year mortgage loan in the amount of $93,840.00 in favor of Countrywide Home Loans, Inc. and secured by Banks' home. *See* Exhibit A attached hereto is a true copy of the mortgage.

15. The mortgage loan has a fixed rate of interest of 5.75% and monthly payments of approximately $1,020.00. Of the $1,020.00, approximately $620.00 is for principal, $168.00 is for interest, and $232.00 is for tax escrow.[1]

16. Banks' mortgage loan was scheduled to mature in January 2018. However, Banks regularly overpaid her mortgage each month. Banks was scheduled to pay off the mortgage loan several years early.

17. From the time that Banks signed the subject mortgage contract through today, Banks never missed a payment on the mortgage loan.

18. On March 9, 2013, BANA sent a notice of transfer of servicing, notifying Banks that the servicing of her loan would be transferred from BANA to Green Tree on April 1, 2013.

19. On March 13, 2013, Banks' principal balance was $32,440.81.[2]

---

[1] While the promissory note maintains a fixed rate of interest, the monthly payments have adjusted based on increases and decreases in real estate taxes since 2002 and Banks' overpayments.

[2] Banks regularly overpaid her mortgage. Based on a standard amortization schedule, if Banks paid only the scheduled amount due each month, the principal balance would have been approximately $39,378.00 on March 13, 2013. Due to her overpayments, she was approximately $7,000.00 ahead on her mortgage loan.

20. On March 21, 2013, Green Tree sent Banks a notice of transfer of servicing. This was the initial communication by and between Green Tree and Banks ("initial communication").

21. In its initial communication, Green Tree set forth and identified a principal balance in the amount of $33,091.21. The true balance was $32,440.81.

22. Green Tree's initial communication further advised Banks that she could send a QWR to Green Tree concerning the servicing of her loan.

23. Banks called BANA and Green Tree to verbally dispute the principal balance.

24. On April 18, 2013, within 30 days of receiving Green Tree's initial communication, Banks sent both Green Tree and BANA a QWR disputing the servicing and accounting of the loan and an FDCPA dispute letter (the "first dispute letter").

25. The first dispute letter specifically stated that Banks had attempted to contact both entities regarding her mortgage balance, and that, "Green Tree ha[d] the wrong balance transfer amount."

26. During this dispute period, Green Tree assessed late fees against Banks and called her cell phone and work phone seeking to collect upon the "defaulted" debt several times each week.

27. Banks never gave authorization to Green Tree to call her cell phone or work phone.

28. During each of the phone calls, Banks requested that Green Tree stop calling both her cell phone and work phone and notified Green Tree that she does not consent to any of the calls.

29. BANA and Green Tree never provided a substantive response to Banks' first dispute letter.

30. On May 2, 2013, BANA responded to the first dispute letter merely stating that it had enclosed "*a detailed outline of transactions*" and *"a history or information on payments we have received from you..."* BANA did not assist in correcting the account with Green Tree.

4

31. All that was attached to BANA's May 2, 2013 letter was a payment history that was nearly impossible for an unsophisticated consumer to understand. Banks received no further response from BANA. BANA never investigated her servicing dispute.

32. On May 10, 2013, Green Tree sent Banks a letter acknowledging receipt of her first dispute letter.

33. On May 10, 2013, Green Tree also sent Banks a "Grace Period Notice" stating that she was more than 30 days past due and may seek approved HUD counseling to avoid foreclosure.

34. On May 13, 2013, Green Tree sent Banks a notice of default.

35. On May 15, 2013, Green Tree sent Banks a notice of default and acceleration.

36. On May 29, 2013, Green Tree responded to Banks' first dispute letter. The letter stated, "*As of the date of this correspondence, your principal balance is $31,817.00....We have enclosed a Verification of Mortgage (VOM), payment history, and copy of the Note, for the above referenced account.*" In reality, Green Tree did not include the VOM, payment history, or copy of the Note with its letter. Green Tree's response reflected that it had not corrected the improper principal balance increase, nor investigated the dispute.

37. On May 29, 2013, Banks' principal balance should have been $31,218.03. Green Tree continued to report her principal balance approximately $650.00 more than it should have been, and charged Banks' account for late fees and other charges.

38. Banks continued to make her monthly payments to Green Tree. However, Green Tree continued to assess late fees to Banks' account and hold her in "default."

39. Green Tree continued to send Banks default, demand, collection, and dunning letters.

40. Green Tree never adequately responded to Banks' first dispute letter, never corrected its improper servicing and accounting, and never verified the subject debt.

5

41. Together, BANA and Green Tree assessed hundreds of dollars in unearned fees and costs, including late fees, against Banks' account leading up to and upon the transfer of servicing on April 1, 2013, as well as during the months after the transfer.

42. On July 17, 2013, Banks sent Green Tree another QWR and dispute letter ("second dispute letter"). The letter stated, among other things:

> *I called your offices today and spoke with one of your representatives; she informed me that you've received only two payments from me since you acquired my mortgage in March of 2013. I [have] records from my bank accounts with Chase that you've received and cashed 3 checks for over $1,000.00 each....So if you were paid for April, May and June can someone tell me how I owe you for March?...If I owe less than $30,000.00 what makes your company believe that you'll get it in foreclosure if you play with the numbers.*

43. On August 12 and August 13, 2013, Green Tree sent Banks two more notices of default in an attempt to collect the "defaulted" debt.

44. By the middle of August 2013, feeling defeated and bullied into an imminent foreclosure, Banks paid all of the late fees and other amounts that Green Tree claimed she owed. Banks felt as though she had no choice but to submit.

45. On October 19, 2013, Banks sent another QWR and dispute letter to both Green Tree and BANA ("third dispute letter"). The letter requested verification of the debt, including the payment history, complete loan transaction history, the full name, address, and telephone number of the current holder of the original mortgage note (under § 1641(f)(2) of TILA).

46. On October 29 and October 30, 2013, BANA sent two letters to Banks acknowledging receipt of Banks' third dispute letter.

47. On November 2, 2013, BANA sent a response to Banks' third dispute letter that included only BANA's loan history without any response or explanation.

48. Green Tree did not respond to Banks' second or third dispute letters at all.

6

49. Banks has never received a payment history from Green Tree for the time period that Green Tree serviced the loan.

50. Green Tree never provided Banks with the identity of, or any contact information for, the creditor of the subject loan in response to the TILA § 1641(f) request in her third dispute letter.

51. Since Green Tree acquired servicing rights, it called Banks' cell phone at least 15 times and her work phone at least 15 times to collect upon the "defaulted" debt.

52. Green Tree ignored Banks' requests to stop calling her cell phone and work phone.

53. Green Tree used an automatic telephone dialing system ("ATDS") to make the calls.

54. Green Tree had actual knowledge that it lacked authority to call Banks' cell phone.

55. Banks notified Green Tree over the phone during nearly every call that Green Tree could not call her cell phone; Banks unequivocally denied and revoked any consent for the calls.

56. Green Tree continued to make collection calls to Banks using ATDS. Banks was harmed by Green Tree's repeated collection calls as she was charged for the use of her cellular phone.

57. The calls to Banks' cell phone also interrupted her work. While Banks was driving in her car, the calls would automatically come through the automated speaker system in her car, whereby passengers would hear Green Tree's collection calls. As part of her profession, co-workers in the medical field were regularly in the car with Banks and heard the collection calls.

58. Banks has suffered damages of illegal fees and charges, interest, negative credit reporting, the loss of the misapplied payments, emotional distress, humiliation, anxiety, and the loss of time and sleep. All of the causes of action below are the proximate cause of said damages.

59. Banks restates each and every allegation, including the allegation of damages in paragraph 58, as if fully alleged in each count of this complaint.

## COUNT I – BREACH OF CONTRACT
### (AGAINST BANA AND GREEN TREE)

60. Banks had a valid and enforceable mortgage contract with BANA as the servicer of the subject loan through April 1, 2013. Banks has a valid and enforceable mortgage contract with Green Tree as the current servicer of the subject loan. Green Tree is liable to Banks for the actions of BANA as the assignee of the contract from BANA.

61. Banks fully performed her duties under the contract by tendering all monthly payments and by complying with all other terms of the subject loan and mortgage contract.

62. Banks has made every payment and complied with all terms of the mortgage contract.

63. In March 2013, prior to the transfer of servicing of the subject loan from BANA to Green Tree, Banks' loan was contractually current.

64. Leading up to and upon the transfer of servicing, BANA and Green Tree treated the mortgage loan as if it was in default and tried to collect an inflated principal balance from Banks.

65. Upon the transfer of servicing, BANA and Green Tree deducted amounts for unearned fees and costs before applying Banks' payments to principal, interest, and escrow.

66. BANA and Green Tree misapplied Banks' payments, placed Banks' payments into a suspense account, and failed to allocate her payments to principal and interest.

67. Banks requested that BANA and Green Tree refund the balance in her suspense account, but her request was refused. BANA and Green Tree failed to acknowledge and apply Banks' payments in accordance with the mortgage contract.

68. Without sending notice, BANA and Green Tree assessed penalties, increased Banks' monthly payment amount, increased her principal balance, and recorded her loan as past due.

69. BANA and Green Tree are in further material breach of contract for their:

   a. failure to credit and apply Banks' payments as required by the contract;
   b. assessment of unauthorized late fees, legal fees, and costs;
   c. converting escrow funds to unauthorized fees and costs;
   d. failure to apply payments to interest and principal before escrow and fees;
   e. failure to provide accurate repayment and "reinstatement" figures;
   f. failure to accurately respond to Banks' correspondence and other disputes; and
   g. failure to conduct their affairs in good faith.

WHEREFORE, Plaintiff REGINA BANKS respectfully requests that this Honorable Court:

   a. find that Defendants materially breached the mortgage contract;
   b. award Banks her actual damages to be proven at trial;
   c. award Banks her reasonable attorney fees and costs; and
   d. award Banks any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
### (AGAINST BANA AND GREEN TREE)

70. The subject loan is a "federally related mortgage" under RESPA. *See* Exhibit A.

71. BANA and Green Tree (collectively the "Servicers") each qualify as a "servicer" under RESPA § 2605(i)(2).

72. While servicing the subject loan, the Servicers failed to investigate Banks' disputes of improper fees, costs, and charges not legally due under the mortgage contract or applicable law.

73. Green Tree violated RESPA § 2605 when it failed to honor Banks' payments within 60 days of obtaining servicing rights on April 1, 2013.

74. Green Tree violated RESPA § 2605(d) when it failed to properly credit payments made during the 60 day transfer period.

75. The Servicers violated RESPA § 2605(e)(3) by failing to acknowledge receipt of Banks' three dispute letters addressing the application of payments, the assessment of illegal fees, increased principal balance, and the handling of the account.

76. The Servicers did not provide any substantive response to any of Banks' dispute letters.

77. The Servicers failed to timely respond to or conduct a reasonable investigation in response to Banks' three dispute letters and requests for information in violation of RESPA § 2605(e).

78. The Servicers violated RESPA by failing to correct Banks' account within 60 days of receiving a letter disputing the servicing in violation of RESPA § 2605(e)(2)(A).

79. The Servicers violated RESPA by:

   i. demanding payments that significantly exceeded the actual amount owed;
   ii. overcharging Banks for late fees and costs;
   iii. assessing fees against Banks without conducting a complete and accurate annual account analysis or providing prior notice (12 U.S.C. § 2609(b)); and
   iv. deducting amounts for unrelated and improper fees and costs.

80. Banks suffered additional damages from violations of RESPA §§ 2605 and 2609 in the amount of the wrongful charges assessed against her loan, which she was forced to pay. Banks has not been reimbursed for these charges by the Servicers.

WHEREFORE, Plaintiff REGINA BANKS requests that this Honorable Court:

   a. grant judgment in her favor and against BANA and Green Tree;
   b. declare BANA and Green Tree's perpetual conduct to be a violation of RESPA;
   c. award Banks actual and additional damages pursuant to RESPA § 2605;
   d. award Banks reasonable attorney fees and costs pursuant to RESPA § 2605(f); and
   e. award any other relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST GREEN TREE)

81. Banks is a "consumer" as defined by FDCPA § 1692a(3).

82. The subject debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

83. Green Tree qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

84. Green Tree qualifies as a "debt collector" because it treated the subject loan as if it was in default when it acquired rights to the subject loan.

    a.  **Violation of §§ 1692c & d**

85. Green Tree violated FDCPA § 1692c(a)(3) by contacting Banks at her place of employment (a hospital) knowing that Banks' employer prohibited such communications. Banks had specifically requested that Green Tree stop calling her work phone and cell phone.

86. Green Tree engaged in abusive and oppressive conduct in violation of FDCPA § 1692d through (i) unethical mismanagement of the subject loan account; (ii) refusal to correct its accounting errors or adequately respond to Banks' repeated disputes; (iii) refusal to acknowledge the express terms of the subject loan and mortgage contract; (iv) refusal to correct the principal balance; (v) misapplication of Banks' payments without providing sufficient notice or reason; (vi) assessment of illegal fees; (vi) forcing Banks to pay the wrongful fees; (vii) repeatedly calling Banks at work to collect the subject loan debt; and (viii) threatening foreclosure.

87. Green Tree violated FDCPA § 1692d(5) by repeatedly causing Banks' work phone and cell phone to ring and repeatedly engaging Banks in conversations regarding the collection of the subject debt.

### b. Violation of §§ 1692e & f

88. Green Tree's actions were unfair, unconscionable, false and deceptive under FDCPA §§ 1692e & f as a result of its (i) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or contract; (iii) misrepresentation of the amounts owed to cure the "default;" (iv) declaring the loan in delinquent or default status when Banks had complied with all terms of the contract; (v) assessment of illegal fees and corporate advances against Banks; and (vi) threatening foreclosure.

89. Green Tree misrepresented the debt by lumping its fees, unauthorized corporate advances, and costs in with the principal debt obligation in violation of § 1692f.

### c. Violation of § 1692g(b)

90. After the initial communication from Green Tree, Banks disputed the debt within 30 days of receiving the validation notice, triggering Green Tree's duty to verify the debt or cease collection actions.

91. After acknowledging Banks' debt dispute, Green Tree failed to verify the debt or cease collection activities. Green Tree continued collection efforts after receiving Banks' dispute in violation of § 1692g.

WHEREFORE, Plaintiff REGINA BANKS requests that this Honorable Court:

a. enter judgment in her favor and against Green Tree;
b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
c. award Banks statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
d. order the deletion of all adverse credit reporting related to the loan;
e. award Banks costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and
f. award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### (BANA AND GREEN TREE)

92. Banks meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

93. The Servicers violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in their attempts to collect a debt.

    **a. Unfairness**

94. Banks' inquiries and disputes regarding the servicing of her loan were never investigated or adequately answered; the lack of clarity from the Servicers resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of the mortgage loan. This never-ending battle lasted over a year.

95. The Servicers' conduct in relation to Banks' loan was willful, malicious, unfair, arbitrary, and designed to place Banks' account in a perpetual state of "default."

96. The Servicers' conduct offends public policy as it demonstrates an industry-wide practice of charging unearned fees and costs to a borrower in order to make a profit, forcing borrowers to make monthly payments without properly crediting the payments, and by profiting off of Banks' overpayments.

97. The Servicers' actions caused substantial injury to Banks and to consumers generally, as Banks and consumers reasonably expect their contracts to be honored, their loans and accounts to be properly managed, and their payments properly applied.

98. Banks could not avoid these immoral undertakings because the Servicers would not accurately communicate with her in response to her phone calls, letters, and other objections.

99. When taken as a whole over a year, the Servicers' conduct was so unethical and unending, that Banks had no choice but to submit.

### b. Deception

100. The Servicers' following actions were deceptive: (i) attempting to collect upon and threatening to foreclose upon a debt that was not in default; (ii) sending disclosures, statements, and notices that included unauthorized or unearned costs and fees; (iii) making material misrepresentations of fact regarding the status of the subject loan, the payment history, and the amounts actually owed; (iv) overcharging Banks' account in late fees and other costs not authorized by the contract or law; (v) providing conflicting disclosures to Banks; (vi) accelerating the debt and threatening foreclosure and legal action, and (vii) employing communications with Banks that were confusing and specifically designed to deceive Banks so she could not decipher the true statements from the deceptive statements.

101. The Servicers increased Banks' principal balance in a deceptive fashion by hiding the increase within a notice of a transfer of servicing.

### c. Misrepresentation

102. In addition to the above conduct, the Servicers misrepresented the amounts due so Banks could not understand why her payments were insufficient to bring the loan "current."

103. Banks relied on the amounts that the Servicers stated that she owed to her detriment.

104. Banks relied on the terms of the subject loan, by paying the amounts that she owed, only to be tricked into believing she was in "default."

105. The Servicers misrepresented the status of the subject debt and tricked Banks by intentionally keeping the account in a perpetual state of "default."

106. The Servicers made material misrepresentations regarding the amounts due under the loan, amounts due for costs and fees, and how Banks' payments were applied.

107. Due to the misrepresentations, Banks was unable to determine why her payments were "insufficient" to bring the loan "current" and unable to determine the true principal balance.

108. The Servicers intended Banks to rely on their deceptive and unfair acts and their misrepresentations, and Banks did in fact rely on the Servicers' deceptive and unfair acts to her detriment by paying an inflated and fraudulent amount to bring the loan current.

109. The misrepresentations, deception, and unfair practices complained of occurred in the course of conduct involving trade or commerce.

110. Punitive damages are warranted because the Servicers' conduct was outrageous, willful, wanton, showed reckless disregard for the rights of Banks and consumers in general, and carried on for over a year.

WHEREFORE, Plaintiff REGINA BANKS requests that this Honorable Court:

a. enter judgment in her favor and against the Servicers;
b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
c. award Banks statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;
d. order the deletion of all adverse credit reporting related to the loan;
e. award Banks costs and reasonable attorney fees under 815 ILCS 505/10a(c); and
f. award any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATION OF THE TRUTH IN LENDING ACT
### (AGAINST GREEN TREE)

**a. Violation of § 1641(f)**

111.  On October 19, 2013, Banks sent a written request to Green Tree pursuant to § 1641(f). The letter requested the full name, address, and telephone number of the current holder of the original mortgage note (under § 1641(f)(2) of TILA).

112.  Green Tree never provided Banks with a response to the § 1641(f) written request with the required information, including the identity, address, or the telephone number of the new creditor and master servicer of the obligation.

113.  As a result, Banks was unaware of who owned her loan, who to contact regarding her increased principal balance, or who could ultimately resolve her never-ending dispute.

**b. Violation of § 1666d**

114.  Green Tree collected fees, costs, and charges in excess of those permitted by the mortgage contract or permitted by law, resulting in a credit balance in the subject loan account in excess of $1.

115.  Banks requested that Green Tree refund the credit balance but her request was refused. This resulted in unearned fees and finance charges withheld by and for the benefit of Green Tree, amounting to a violation of TILA § 1666d.

WHEREFORE, Plaintiff REGINA BANKS requests that this Honorable Court:

    a. grant judgment in her favor and against Green Tree;
    b. declare Green Tree's conduct to be a violation of TILA;
    c. award Banks actual and additional damages pursuant to TILA § 1666d;
    d. award Banks reasonable attorney fees and costs pursuant to TILA § 1666d; and
    e. award any other relief this Honorable Court deems equitable and just.

### COUNT VII – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (AGAINST GREEN TREE)

116. The TCPA prohibits calling persons on their cell phone using ATDS. 47 U.S.C. § 227(b)(1)(iii). The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

117. Green Tree violated the TCPA by placing over 15 phone calls to Banks' cell phone using ATDS. Banks did not expressly consent to receive calls from Green Tree to her cell phone, and any consent was revoked on numerous occasions.

118. Pursuant to 47 U.S.C. § 227(b)(3)(B), Green Tree is liable to Banks for at least $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Green Tree's willful and knowing violation of the TCPA should trigger this Honorable Court's ability to triple the damages to which Banks is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff REGINA BANKS requests that this Honorable Court:

 a. grant judgment in her favor and against Green Tree;
 b. declare Green Tree's conduct to be a violation of the TCPA;
 c. award Banks damages of at least $500 per phone call and trebel damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);
 d. award Banks reasonable attorney fees and costs; and
 e. award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

By: ___/s/Ross M. Zambon____
**Ross M. Zambon**
Attorney for Plaintiff

Ross M. Zambon
ARDC # 6294149
Mara A. Baltabols
ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523