**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| REGINA L. BANKS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-CV-2825 |
| | ) | |
| GREEN TREE SERVICING, LLC, and BANK | ) | |
| OF AMERICA, N.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**GREEN TREE SERVICING, LLC'S RULE 12(b)(6) MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Green Tree Servicing, LLC respectfully moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff Regina L. Banks's Complaint.[1]

INTRODUCTION

Banks alleges that Green Tree began servicing her loan in April 2013 and thereafter misapplied her payments, assessed improper late fees, ignored her qualified written requests ("QWRs"), and harassed her via telephone. Based on these allegations, Banks brings six claims against Green Tree for (i) breach of contract; (ii) violations of the Real Estate Settlement Procedures Act ("RESPA"); (iii) violations of the Fair Debt Collection Practices Act ("FDCPA"); (iv) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (v) violations of the Truth in Lending Act ("TILA"); and (vi) violations of the Telephone Consumer Protection Act ("TCPA").

A close review of Banks's complaint reveals that all her claims suffer from fatal defects that compel dismissal at the pleading stage. Specifically:

---

[1] Bank of America, N.A. has joined Green Tree's motion to dismiss and also filed its own motion with additional arguments. To the extent those arguments would apply with equal force to Green Tree, Green Tree joins in, adopts, and incorporates those arguments.

- Green Tree is the servicer of the loan—not a creditor—and thus cannot be liable for the claims asserted under the TILA.

- Banks fails to state a claim under the TCPA because she fails to plead any facts to support her conclusion that Green Tree used an Automatic Telephone Dialing System ("ATDS") to call her cellular phone.

- Banks fails to state a claim under the FDCPA because she fails to plead facts to support the conclusion that Green Tree considered her loan to be in default upon acquisition, and such an allegation is necessary to establish that Green Tree is a "debt collector."

- The ICFA does not apply to purely private contractual disputes such as this.

- Banks admits that she voluntarily paid the disputed principal, interest, and late fees on her loan and so the voluntary payment doctrine precludes her breach of contract claim.

- Banks fails to plead any facts to support her RESPA claims under 12 U.S.C. §§2605(d), 2605(e)(3) and 2609(b) and because those claims are inextricably intermixed with her other RESPA claims, dismissal of the entire claim is appropriate.

As further detailed below, these issues are dispositive and establish that this Complaint should be dismissed on the pleadings.

## ALLEGATIONS IN THE COMPLAINT[2]

Banks executed a mortgage on December 10, 2002 to secure a loan in the amount of $93,840 from Countrywide Home Loans, Inc. (Compl. at ¶14). Banks made every payment on her loan and, in fact, regularly overpaid. (*Id*. at ¶¶16-17). As of April 1, 2013, Defendant Bank of America, N.A. transferred servicing of Banks's loan to Green Tree. (*Id*. at ¶18). Prior to the servicing transfer, Banks's principal balance was $32,440.81. (*Id*. at ¶19).

In its initial communication to Banks on March 21, 2013, Green Tree claimed the principal balance was $33,091.21. (*Id*. at ¶21). Banks subsequently contacted Green Tree by phone to verbally dispute the principal balance. (*Id*. at ¶23). On April 18, Banks sent Green Tree a QWR and a FDCPA dispute letter. (*Id*. at ¶24). After that date, Green Tree assessed late

---

[2] Green Tree accepts Banks's allegations as true for purposes of this motion only.

fees and called her cell and work phones to collect on the now defaulted debt. (*Id.* at ¶26). In making the calls, Green Tree used an ATDS. (*Id.* at ¶53).

On May 10, Green Tree acknowledged receipt of Banks's QWR. (*Id.* at ¶32). On May 29, Green Tree sent Banks a substantive response to the QWR indicating that the principal balance on the loan was $31,817.00 and purporting to include a payment history and other documents. (*Id.* at ¶36). The May 29 letter did not contain the pay history or the other documents and the loan balance was still incorrect; as of May 29, the loan balance should have been $31,218.03. (*Id.* at ¶¶36-37). Green Tree continued to assess late fees and treat the loan as if it were in default. (*Id.* at ¶¶38-39).

On July 17, Banks sent Green Tree a second QWR. (*Id.* at ¶42). Then, in August 2013, Banks "paid all of the late fees and other amounts that Green Tree claim she owed." (*Id.* at ¶44). Banks ultimately sent a third QWR to Green Tree in October 2013. (*Id.* at ¶45). Green Tree did not respond to either the second or third QWRs. (*Id.* at ¶48).

Based on these allegations, Banks asserts claims for (i) breach of contract, (ii) violations of the RESPA, (iii) violations of the FDCPA; (iv) violations of the ICFA; (v) violations of the TILA; and (vi) violations of the TCPA. (*Id.* at ¶¶60-118).

## LEGAL STANDARD

The Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss under Rule 12(b)(6): "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and, "[s]econd, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, this Court should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations are merely "consistent with" liability, "too vague to provide notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

**ARGUMENT**

## I.     Green Tree Is a Servicer and Cannot Be Liable for the Claims Asserted Under the TILA.

Banks alleges that "Green Tree was the servicer of the mortgage loan from April 1, 2013 to the present." (Compl. at ¶9). In that capacity, Banks alleges that Green Tree violated 15 U.S.C. §1666d by failing to properly refund her credit balance. (*Id*. at ¶¶114-115). Banks also claims that Green Tree violated 15 U.S.C. §1641(f)(2) by failing to provide a response to her request for her creditor's name and contact information. (*Id*. at ¶¶111-113). Both claims fail as a matter of law because the TILA exempts from liability servicers such as Green Tree.

By its very terms, §1666d imposes no obligations on servicers of a loan. Rather, it states that "whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction…the *creditor* shall" take various steps, including refunding any part of the balance at the consumer's request. 15 U.S.C. §1666d (emphasis added). A servicer like Green Tree is not a creditor under the TILA. *See* 15 U.S.C. §1602(g) (defining creditor as only a person who both regularly extends consumer credit payable in more than four installments and is the party listed

on the face of the indebtedness to whom the indebtedness is initially payable); *see also Vincent v. The Money Store*, 736 F.3d 88, 106 (2d Cir. 2013) ("TILA establishes a straightforward, objective inquiry for determining the identity of the creditor: it is 'the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness'") (quoting 15 U.S.C. §1602(g)). Green Tree was not the party named on the original indebtedness and thus cannot be liable under §1666d. (*See* Compl at ¶14 and Ex. A (identifying Countrywide as Banks's lender)); *see also Vincent*, 736 F.3d at 106 (rejecting §1666d claim because The Money Store was not a "creditor").

Section 1641(f)(2) requires servicers to provide information to consumers in response to a consumer's request. But it is well-established that §1641(f)(2) does not impose liability on servicers for their failure to comply. *See Iroanyah v. Bank of Am.*, No. 13-1382, 2014 WL 2198562, *1 fn. 2 (7th Cir. May 28, 2014) ("Green Tree and MERS contend that because they are servicers (Green Tree) and nominees (MERS) of the loans, they are not originators or assignees of either loan and therefore cannot be liable for damages under TILA. ***This is correct***") (emphasis added) (***Exhibit 1***); *see also Marais v. Chase Home Fin.*, 736 F.3d 711, 718-19 (6th Cir. 2013) ("the district court properly dismissed the TILA claim because Marais alleged only that Chase was a servicer of the loan and TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee…we conclude that the district court did not err by holding that Chase, as a mere servicer, cannot be liable for violating 15 U.S.C. §1641(f)(2) and affirm the dismissal of the TILA claim"). Because Green Tree was a mere servicer, Banks's §1641(f)(2) claim fails.

## II. Banks Fails to State a Claim Under the TCPA Because She Alleges No Facts to Support Her Conclusion That Green Tree Utilized an ATDS.

The TCPA prohibits calls made to cell phones using "any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. §227(b)(1)(A)(iii). Here, Banks alleges that Green Tree called her cell phone at least 15 times and "used an automatic telephone dialing system ('ATDS') to make the calls." (Compl. at ¶¶51, 53, 117). But Banks does not provide any further details about the calls or their content. Banks's unadorned conclusions that Green Tree used an ATDS to make the phone calls is insufficient to state a cause of action under the TCPA.

This Court's recent decision in *Johansen v. Vivint, Inc.*, No. 12-C-7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) (***Exhibit 2***) is directly on-point and dispositive. There, the plaintiff, like Banks, simply alleged that he received two pre-recorded messages on his cell phone from Vivint using an ATDS. *Id.* at *3. This Court found those allegations insufficient:

> Without enhancing his complaint with anything more than the language already available in the statute, Plaintiff provides only a threadbare, formulaic recitation of the elements of a TCPA cause of action, which is not entitled to an assumption of truth. Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts. Still, when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details.

*Id.* (internal quotation marks and citations omitted). The Court further explained that "[i]t is not unreasonable…to require a plaintiff to describe the phone message he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS." *Id.*

By simply concluding that Green Tree used an ATDS without providing any further detail, Banks has failed to meet the basic pleading burden required of a TCPA plaintiff. As a result, her TCPA claim should be dismissed.

### III. Banks Fails to State a Claim Under the FDCPA Because She Fails to Allege Facts to Support the Conclusion That Green Tree Is a "Debt-Collector."

Banks alleges that Green Tree violated various provisions of the FDCPA in the course of servicing her loan. (Compl. at ¶¶81-91). But to be liable under the FDCPA, Banks must plead that Green Tree is a "debt-collector." She does not, and her FDCPA claim should be dismissed.

To qualify as a debt-collector in these circumstances, Green Tree must have acquired the servicing rights for the debt *after* it went into default. *See* 15 U.S.C. §1692a(6)(F)(iii). The Seventh Circuit has recognized a limited exception to that general rule, holding that even if the debt is not actually in default, an entity is a debt-collector if it believes that the debt is in default at the time of acquisition and acts accordingly. *See Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 539 (7th Cir. 2003). But if the debt is not in default and the entity acquiring the debt does not believe the debt is in default at the time of the acquisition, that entity is not a debt-collector. *Hutchins v. Fairbanks Cap. Corp.*, No. 02-C-2256, 2003 WL 1719997, *5 (N.D. Ill. Mar. 31, 2003) (**Exhibit 3**). Here, by Banks's own allegations, her debt was not in default at the time Green Tree acquired the servicing rights. Accordingly, Banks must meet the *Schlosser* exception and plead that Green Tree obtained the servicing rights to her loan believing that the loan was in default.

Banks, however, has not pleaded any facts to support the conclusion that Green Tree believed her loan was in default as of April 1, 2013. Rather, Banks simply alleges that Green Tree sent her an initial communication on March 21, 2013 and that the principal balance on that communication was incorrect. (Compl. at ¶¶21-22). Per the Complaint, it was only *after* Banks sent a QWR to Green Tree on April 18 that Green Tree started assessing late fees and claiming a default. (Compl. at ¶26). This is in contrast to *Schlosser*, where the ***initial*** communication from the creditor stated "[t]his letter constitutes formal notice of default…" *Schlosser*, 323 F.3d at

535. Without pleading any facts to support the conclusion that Green Tree considered her loan to be default when servicing was acquired, Banks cannot meet the limited *Schlosser* exception and cannot bring a viable claim under the FDCPA.

## IV. Banks's ICFA Claim Fails Because the Statute Does Not Apply to Private Contractual Disputes That Do Not Impact the General Public.

Banks's ICFA claim must be dismissed because ICFA is not a remedy for a purely private contractual dispute that does not impact the public generally. The Illinois Supreme Court has held that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169, 835 N.E.2d 801, 844 (Ill. 2005). As such, courts have consistently dismissed ICFA claims that are nothing more than breach of contract claims recast under a different name. *See Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 704, 832 N.E.2d 189, 196 (Ill. App. Ct. 2005) (dismissing ICFA claim premised on defendant's failure to make "prompt" refunds as required by the mortgage because ICFA claim was "merely a breach of contract count clothed as a violation of the Consumer Fraud Act"); s*ee also Langendorf v. Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1024 (N.D. Ill. 2008) (dismissing ICFA claim because "Plaintiffs deceptive practice allegations are based on Defendant's alleged failure to fulfill its policy obligations—the same exact conduct forming the basis for the breach of contract claim").

This rule is particularly applicable in cases that address purely private contractual disputes because ICFA "is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier v. First Fed. Savings & Loan Ass'n of Champaign*, 225 Ill. App. 3d 864, 875, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992) (dismissing ICFA claim premised on fees charged pursuant to a loan agreement); *see also Stern v. Great W. Bank*, 959 F. Supp. 478, 486 (N.D. Ill. 1997) (no

ICFA claim where bank and customer simply disagreed on the interpretation of the contract between them); *AGFA v. Wagner Printing Co.*, No. 02-C-2400, 2002 WL 1559663, *5 (N.D. Ill. Jul. 10, 2002) (dismissing ICFA claim involving dispute over interpretation of liquidated damages agreement between contracting parties) (**Exhibit 4**); *Skyline Intern. Dev. v. Citibank, F.S.B.*, 302 Ill. App. 3d 79, 85, 706 N.E.2d 942, 946 (Ill. App. Ct. 1998) (ICFA not implicated by isolated incidents that affect only the parties involved); *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1134-35, 822 N.E.2d 454, 466 (Ill. App. Ct. 2004) (no ICFA claim where conduct involved interpretation of contract in question and did not affect consumers generally).

Here, the allegations in Banks's ICFA claim amount to nothing more than a repackaged breach of contract claim. The crux of both claims is that Banks met her contractual obligation by making her payments in accordance with the loan agreements, but Green Tree breached its obligations by failing to apply those payments correctly and then charging late fees and threatening foreclosure. (*Compare* Compl. at ¶69 (detailing Green Tree's alleged breaches of contract) *with* ¶100 (detailing Green Tree's alleged deceptive acts)). Moreover, the dispute between Banks and Green Tree is a purely private dispute. Although Banks attempts to implicate consumers generally, (*see id*. at ¶¶96-97), she has pleaded no facts to suggest that this is anything more than a dispute between her and her servicers. This is exactly the type of ICFA claim that has been consistently rejected by the authorities cited above.

"[T]he Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *See Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000). Banks's dispute with Green Tree is a contractual dispute that does not have any widespread public implications. Her ICFA claim should be accordingly dismissed.

**V.    Banks's Breach of Contract Claims is Barred by the Voluntary Payment Doctrine.**

Banks alleges that Green Tree has breached the loan agreements and that she was damaged because she was forced to pay improper principal, interest, and late fees.  (Compl. at ¶¶44, 58).  But it is well-settled Illinois law that the voluntary payment doctrine bars the recovery of amounts voluntarily paid under a claim of right, without duress, and with knowledge of the facts.  *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 668 (7th Cir. 2001).  The doctrine is based on the sound principle that "if the party would resist an unjust demand, he must do so at the threshold…and if litigation is intended by the one of whom the money is demanded, it should precede payment … he cannot postpone the litigation by paying the demand in silence … and afterward sue to recover the amount paid."  *Randazzo*, 262 F.3d at 668; *see also Harris v. ChartOne*, 362 Ill. App. 3d 878, 881, 841 N.E.2d 1028, 1031-32 (Ill. App. Ct. 2005).  The voluntary payment doctrine applies here and mandates dismissal of Banks's breach of contract claim.

The *Harris* case is on-point.  The plaintiffs filed a putative class action alleging that defendants "charged the plaintiffs excessive fees for copying medical records and/or charged fees for services that were not delivered."  *Harris*, 362 Ill. App. 3d at 879.  The trial court dismissed the claims and the appellate court affirmed, finding that the voluntary payment doctrine applied because plaintiffs "paid the invoices voluntarily, knowing the purported basis for the charges."  *Id.* at 882.

The same reasoning applies here.  Banks acknowledges that she knew that she was being charged for items that she did not believe she owed and had previously disputed.  (*See, e.g.*, Compl. at ¶¶37-38).  Despite that knowledge, Banks voluntarily paid "the late fees and other amounts that Green Tree claimed she owed."  (*Id.* at ¶44).  That is a text-book voluntary payment and Banks is now barred from seeking to recover those payments.  *Harris*, 362 Ill. App. 3d at

-10-

882; *see also Randazzo*, 262 F.3d at 667-71 (dismissing breach of contract claims on voluntary payment grounds); *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822-24 (7th Cir. 2010) (holding claim for breach of contract is barred under the voluntary payment doctrine).

Furthermore, the duress exception to the voluntary payment doctrine is inapplicable here. For a payment to be "involuntary or compulsory, pressure must be brought to bear on the payor and that pressure must be the product of some actual or threatened power wielded over the payor from which he has no immediate relief." *See Smith v. Prime Cable of Chi.*, 276 Ill. App. 3d 843, 851, 658 N.E.2d 1325, 1332 (Ill. App. Ct. 1995). Banks suggests that she was under duress because she had to make the payments to avoid the threat of foreclosure. (Compl. at ¶44). But "payment made pursuant to threat of litigation or to prevent the bringing of legal action is regarded as voluntary for the reason that an ample remedy by way of defense to the suit would exist." *See Smith*, 276 Ill. App. 3d at 851-52 (internal citations omitted); *see also Helmick v. Carter*, 171 Ill. App. 25, 30 (Ill. App. Ct. 1912) (finding voluntary payment doctrine applied because plaintiff did not "set forth any acts done by defendant or any threats made by him aside from the threat that foreclosure proceedings would be immediately commenced unless payment was made, and these do not constitute fraud and deceit or duress"). Banks had the option not to pay the allegedly improper fees and then defend and counterclaim in any foreclosure action filed by Green Tree. She opted to pay those fees instead, and she cannot now recover on her voluntary payments.

## VI. Banks Fails to Plainly Allege Facts to Support Her RESPA Claims.

Banks's RESPA claim is highly confusing in that it intermixes multiple distinct RESPA claims within a single count and sometimes a single allegation. (Compl. at ¶¶73 (violation of §2605), 74 (violation of §2605(d)), 75 (violation of §2605(e)(3)), 77 (violation of §2605(e)), 78 (violation of §2605(e)(2)(A)), 79 (violation of §2609(b)); 80 (violation of §§2605 and 2609)).

-11-

Several of those distinct claims are obviously unsustainable. Given the confusion that would be caused by trying to excise the failed claims and then asking Green Tree to respond to the surviving claims, the entire RESPA claim should be dismissed.

Banks claims that Green Tree violated §2605(d) by failing to properly credit payments made during the 60-day period after servicing was transferred. (Compl. at ¶74). But §2605(d) is not on point; it prohibits a transferee servicer (Green Tree) from treating a payment as late and imposing late fees if that payment is timely received by the transferor servicer (Bank of America). Banks has not alleged that she made timely payments to Bank of America instead of Green Tree during the 60-day transfer period and Green Tree treated those payments as late. Banks thus has no viable claim under §2605(d). *See Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 526 (courts should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged").

The same is true for §2605(e)(3); Banks claims that Green Tree violated §2605(e)(3) by "failing to acknowledge receipt of Banks' three dispute letters addressing the application of payments, the assessment of illegal fees, increased principal balance, and the handling of the account." (Compl. at ¶75). But §2605(e)(3) only prohibits a servicer from providing credit information to credit reporting agencies during the 60-day period after receipt of a QWR. In other words, Banks's allegations, even if true, are not a violation of §2605(e)(3). Moreover, Banks has not pleaded any facts related to Green Tree's provision of credit information that could actually trigger liability under §2605(e)(3). Any claim premised on §2605(e)(3) should be dismissed. *See Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 526.

Finally, Banks alleges that Green Tree violated §2609(b) by "assessing fees against Banks without conducting a complete and accurate annual account analysis or providing prior notice." (Compl. at ¶¶79-80). But §2609(b) simply requires that the servicer "notify the

borrower not less than annually of any shortage of funds in the escrow account." "Assessing fees" is not a violation of §2609(b) nor has Banks alleged that Green Tree failed to notify her of any escrow shortage. Any claim premised on §2609(b) should be dismissed as well. *See Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 526.

Simply put, Banks's RESPA claim is a conglomeration of arguments under various provisions of §§2605 and 2609, but from the face of the Complaint, it is obvious that some of the provisions are inapplicable. Rather than futilely attempting to excise the inapplicable portions, this Court should dismiss the entire RESPA claim.

CONCLUSION

For all of the reasons set forth above, Plaintiff Regina L. Banks's Complaint should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6).

DATED: July 14, 2014     Respectfully Submitted,

             **GREEN TREE SERVICING, LLC**

             By: /s/ Ryan M. Holz
               One of Its Attorneys

J. Matthew Goodin
Ryan M. Holz
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-0656 (RMH)
*jmgoodin@lockelord.com*
*rholz@lockelord.com*

## CERTIFICATE OF SERVICE

I, Ryan M. Holz an attorney, certify that I caused the foregoing ***Rule 12(b)(6) Motion to Dismiss and Incorporated Memorandum of Law*** to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on July 14, 2014.

/s/ Ryan M. Holz