UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGINA L. BANKS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 14-cv-2825 |
| GREEN TREE SERVICING, LLC, and BANK OF AMERICA, N.A., | ) |
| Defendants. | ) Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Regina L. Banks, filed a six-count complaint against Green Tree Servicing, LLC, and Bank of America, N.A., stemming from the servicing and debt collection related to Banks' home mortgage loan. Defendants move to dismiss [20, 22] the complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the motions are granted in part and denied in part.

**Background**

Plaintiff, Regina Banks, executed a 15 year mortgage loan in the amount of $93,840.00 with Countrywide Home Loans, Inc. and secured by Banks' home. Bank of America, N.A. ("BANA") was the servicer on Banks' home mortgage loan from sometime after origination until April 1, 2013. (Complaint, Dkt. 1 at ¶ 10). On April 1, 2013, Green Tree Servicing, LLC, became the servicer on Banks' loan. Banks alleges that she made all the monthly payments on her home mortgage loan from its origination in 2002 through the filing of the instant complaint. (*Id.* at ¶ 10-11). "At the time of the transfer, BANA and Green Tree misapplied Banks' payments, miscalculated Banks' principal balance, and treated the loan as if it was in default." (*Id.* at ¶11). On March 13, 2013, just prior to the transfer of servicing rights, Banks' principal balance was $32,440.81. (*Id.* at ¶19). Green Tree's initial

1

communication with Banks was on March 21, 2013, and was a notice of transfer of servicing. The letter indicated the principal balance of the loan was $33,091.21. (*Id.* at ¶20-21). Banks alleges that she called BANA and Green Tree to verbally dispute the principal balance. She also alleges that she sent both Green Tree and BANA a QWR disputing the servicing and accounting of the loan and an FDCPA dispute letter on April 18, 2013. This first dispute letter specifically stated that she had attempted to contact both Green Tree and BANA and that "Green Tree ha[d] the wrong balance transfer amount." (*Id.* at ¶25).

Green Tree assessed late fees against Banks and called her cell phone and work phone to collect upon the "defaulted" debt several times each week. Banks never authorized Green Tree to call her cell phone or her work phone. During each call, Banks requested that Green Tree stop telephoning her and notified Green Tree that she does not consent to any of the calls. (*Id.* at ¶28).

On May 2, 2013, BANA responded to Banks' first dispute letter stating that it had enclosed "a detailed outline of transactions" and "a history or information on payments we have received from you…" Enclosed was a payment history. Green Tree acknowledged receiving Banks' first dispute letter. On May 10, 2013, Green Tree also sent Banks a "Grace Period Notice" stating that she was more than 30 days past due and may seek approved HUD counseling to avoid foreclosure. (*Id.* at ¶ 33). Green Tree sent her a notice of default followed by a notice of default and acceleration. On May 29, 2013, Green Tree responded to Banks' first dispute letter, stating "As of the date of this correspondence, your principal balance is $31,817.00… We have enclosed a Verification of Mortgage (VOM), payment history, and copy of the Note, for the above referenced account." (*Id.* at ¶ 36). Green Tree continued to assess late fees and other charges.

On July 17, 2013, Banks sent Green Tree a second QWR and dispute letter. Green Tree sent Banks two more notices of default, on August 12 and 13, 2013, in an attempt to collect the

"defaulted" debt. By mid-August, Banks had paid all of the late fees and other amounts that Green Tree claimed she owed. (*Id.* at ¶ 33).

Banks sent her third dispute letter and QWR on October 19, 2013, to both Green Tree and BANA. The letter requested verification of the debt, including payment history, complete loan transaction history, the full name, address, and telephone number of the current holder of the original mortgage note. (*Id.* at ¶ 45). In letters dated October 29 and 30, 2013, BANA acknowledged receipt of Banks' third dispute letter. On November 2, 2013, BANA responded to Banks' third dispute letter that included only BANA's loan history without any explanation. Green Tree did not respond to Banks' second or third dispute letter.

Banks alleges that Green Tree has called Banks' cell phone and her work phone at least fifteen times without her consent. (*Id.* at ¶ 51). Nearly every time they called, Banks' asked that they not call her cell phone. (*Id.* at ¶ 52). Banks' alleges the calls were made using an automated calling system.

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Cop. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Federal Rule of Civil Procedure 8(a)(2) sets forth the basic pleading requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require a plaintiff to plead particularized facts, the factual allegations in the complaint must sufficiently raise a plausible right to relief above a speculative level. *Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011). Rule 9(b) requires a plaintiff to state allegations of fraud with particularity. Fed. R. Civ. P. 9(b). When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

3

12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 668.

**Discussion**

Banks filed her six-count complaint against both Green Tree and BANA alleging breach of contract and violations of the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Telephone Consumer Protection Act ("TCPA"). The defendants move to dismiss the complaint in its entirety for failure to state a claim.

*1. Count I – Breach of Contract*

Count I alleges breach of contract against both Green Tree and BANA for assessment of penalties despite Banks' payment and compliance with the terms of the mortgage contract. In order to maintain a cause of action for breach of contract, plaintiffs must allege "the existence of a contract, performance of all conditions to be performed by the plaintiff, breach by the defendant, and damages to plaintiff as a consequence thereof." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 352, 733 N.E.2d 835, 248 Ill. Dec. 160 (2000). Green Tree and BANA do not dispute that Banks' has adequately stated a claim for breach of contract, but instead argue that Banks' breach of contract claim is barred by the voluntary payment doctrine. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 668 (7th Cir. 2001).

Here, Banks alleges that, despite believing that defendants were seeking improperly calculated funds, she made the payments under duress stemming from a looming threat of possible foreclosure for nonpayment. While courts ordinarily regard payments made pursuant to threat of litigation or to prevent the bringing of a legal action as voluntary, the issue of duress and compulsory payment generally is one of fact. *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 850-52, 658 N.E.2d 1325 (1st Dist. 1995) (internal citations omitted). Illinois recognizes protest as particularly good evidence

4

of duress. *Randazzo*, 262 F.3d at 670. Banks sent three dispute letters seeking verification of the debt and payment activity. Accordingly, this Court denies dismissal of Count I.

*2. Count II – Violation of RESPA*

Banks alleges violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2506, *et seq.,* sections 2605(d), 2605(e)(2)(A), 2605(e)(3), and 2609. Defendants move to dismiss Count II, arguing that it is confusing because it includes multiple distinct RESPA violations within the same count and the factual allegations do not match the claimed violations.

Section 2605(d) provides that no late fees may be imposed on any federally related mortgage loan for 60-days following the effective date of transfer of the servicing of the loan if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment. Section 2605(e)(2)(A) provides that the servicer has 30 days from the receipt of a qualified written request ("QWR") to make appropriate corrections in the account, "including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower)". Section 2605(e)(3) limits the ability of a servicer to report any late payments to a credit bureau within 60 days of the servicer's receipt from any borrower of a QWR relating to a dispute regarding the borrower's payments. Section 2609 sets forth the limitations on a creditor's requirement of advance deposits in escrow accounts.

Here, there are no factual allegations in the complaint to support a violation of sections 2605(e)(3) and section 2609. Thus, this Court dismisses those claims without prejudice. This Court also dismisses all the RESPA claims against BANA because there are no facts suggesting that BANA did not fulfill its RESPA duties as transferor servicer. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011) (duties under RESPA are imposed on both the transferor and transferee

5

servicers to provide notice of the transfer of servicing of the loan). Banks has arguably stated a claim for violations of sections 2605(d) and 2605(e)(2)(A) against Green Tree. Accordingly, this Court denies Green Tree's motion with respect to Count II regarding violations of RESPA sections 2605(d) and 2605(e)(2)(A).

*3. Count III – Fair Debt Collection Practices Act*

Banks alleges various violations of the FDCPA by Green Tree in the course of servicing her loan. Green Tree argues that Banks fails to allege that Green Tree is a "debt-collector" within the meaning of the FDCPA. Green Tree further argues that in order to be a debt-collector it must have acquired the servicing rights to the loan after it went into default and Banks' own allegations explicitly state that the loan was not in default.

The FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee and as creditors if it was not." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Creditors are not covered by the act. *Id.* To be a debt-collector under the FDCPA, Green Tree would have to have acquired the debt already in default or it would have to believe the debt was in default at the time Green Tree acquired it. *See* 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser,* 323 F.3d at 539.

There is no question here that the debt was not in default on April 1, 2013, when Green Tree acquired the servicing rights to Banks' mortgage. While Green Tree's initial communication with Banks does not state that the debt is in default, the complaint alleges all subsequent communications from Green Tree appear to treat the loan as in default. On May 10, 2013, Green Tree sent her a "Grace Period Notice" stating that Banks' payment was 30 days past due, followed by a notice of default and then a notice of default and acceleration. It thus appears from the allegations, when viewed in the light most favorable to Banks, that Green Tree treated her loan as if it were in default from the time it was acquired. This Court therefore finds that Banks' has

6

adequately alleged Green Tree is a debt-collector subject to the FDCPA rather than simply a creditor.

*4. Count VI – Violations of the Illinois Consumer Fraud Act*

Banks alleges that defendants violated the Illinois Consumer Fraud Act ("ICFA") by engaging in unfair and deceptive acts and by using fraud, deception, and misrepresentation in their attempts to collect a debt. Defendants argue that Banks' ICFA is not an available remedy for a purely private contractual wrong and she has failed to allege facts with sufficient particularity.

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 960, 266 Ill. Dec. 879 (2002). To prove a private cause of action, Banks must establish: (1) a deceptive act or practice by the defendants; (2) defendants' intent that Banks rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; and (4) actual damage to the Banks (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 835 N.E.2d 801, 850, 296 Ill. Dec. 448 (2005) (internal citation omitted). The heightened pleading standard imposed by Rule 9(b) applies to claims arising under the ICFA. *Petri v. Gatlin*, 997 F. Supp. 956, 973 (N.D. Ill.1997). Banks must "identify . . . the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992).

Here, Banks alleges that Green Tree and BANA were deceptive and misrepresented the status of her loan by sending her notices that included unauthorized or unearned costs and fees, and misrepresented the amounts she actually owed. The allegations are thus sufficient to state a claim under the ICFA.

7

Defendants next assert that the dispute amounts to a breach of contract claim and therefore is not actionable under statutory consumer fraud. *Avery*, 835 N.E.2d at 844. When a defendant's actions implicate consumer protection concerns, however, it is more than a mere breach of contract claim. *Dubey v. Pub. Storage, Inc.*, 395 Ill. App. 3d 342, 918 N.E.2d 265, 278, 335 Ill. Dec. 181 (2009). Three factors determine whether practices are unfair: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 960, 266 Ill. Dec. 879 (2002).

Here, Banks also alleges that Green Tree and BANA engaged in deceptive and unfair practices by failing to investigate or adequately answer Banks' inquiries and disputes regarding the servicing of her loan. Banks alleges that defendants' conduct was designed to force borrowers such as Banks to pay unincurred fees while failing to properly credit payments. Thus, Banks pleads more than just a breach of contract. Viewing the allegations in the light most favorable to Banks, this Court finds these claims survive dismissal.

*5. Count V – Violations of the Truth in Lending Act ("TILA")*

Banks alleges Green Tree violated 15 U.S.C. § 1641(f) of the Truth in Lending Act by failing to respond to Banks' QWR with the full name, address, and telephone number of the current holder of the original mortgage note or the new creditor/servicer of the mortgage. Banks also alleges that Green Tree violated section 1666d of TILA by collecting fees in excess of those permitted by the mortgage contract. Green Tree moves to dismiss Count V arguing that a servicer cannot be liable under TILA.

TILA applies only to a "creditor," which is defined in the statute as the person to whom the debt is initially payable. 15 U.S.C. § 1602(g); *Vincent v. Money Store*, 736 F.3d 88, 91 (2d Cir. 2013). Green Tree is not a creditor and therefore is not liable under TILA. Moreover, section 1641(f)(2)

8

does not impose any liability for servicers' failure to comply with that section and provide the information required. Here, Banks alleges only that Green Tree is servicer of the loan. Although courts have recently suggested that a creditor's assignee may be liable under TILA, Banks has not alleged in the complaint that Green Tree is also the creditor's assignee. *See Iroanyah v. Bank of Am.*, 753 F.3d 686, 688 fn. 2 (7th Cir. 2014); *Marais v. Chase Home Fin., LLC,* 736 F.3d 711, 719 (6th Cir. 2013). Accordingly, this Court dismisses Count V without prejudice.

*6. Count VII – Violation of the Telephone Consumer Protection Act*

Banks alleges that Green Tree violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(iii), by calling her on her cellphone without her consent using an ATDS (automated equipment). Green Tree moves to dismiss this count because Banks fails to allege any facts indicating why she believed it was an ATDS. Banks concedes that she did not provide any factual support for her conclusion that the calls were made by ATDS. *See Johansen v. Vivint, Inc.,* No. 12-C-7159, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012). Accordingly, this Court dismisses this Count without prejudice.

**Conclusion**

Based on the foregoing, the defendants' motions to dismiss [20, 22] are granted in part and denied in part. Count II is dismissed as to BANA and as to claims under 12 U.S.C. §§ 2605(e)(3), 2609 without prejudice. Counts IV and V are dismissed without prejudice.

IT IS SO ORDERED.

Date: March 5, 2015         Entered: _____
                                     SHARON JOHNSON COLEMAN
                                     United States District Judge